1  Jack Silver, Esq. SB #160575
2  LAW OFFICE OF JACK SILVER
   708 Gravenstein Highway North, #407
3  Sebastopol, CA 95472-2808
   Tel.(707) 528-8175
4  Email: jsilverenvironmental@gmail.com

5  David J. Weinsoff, Esq. SB # 141372
   LAW OFFICE OF DAVID J. WEINSOFF
6  138 Ridgeway Avenue
   Fairfax, CA 94930
7  Tel. (415) 460-9760
8  Email: david@weinsofflaw.com

9  Attorneys for Plaintiff
   CALIFORNIA RIVER WATCH
10

11                 UNITED STATES DISTRICT COURT

12        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

13

14  CALIFORNIA RIVER WATCH, an          Case No.: 5:17-cv-01534
    IRC Section 501(c)(3), non-profit,
15  public benefit Corporation,          **COMPLAINT FOR INJUNCTIVE**
                                         **RELIEF, CIVIL PENALTIES,**
16              Plaintiff,               **AND DECLARATORY RELIEF**

17        v.                             (Environmental - Clean Water Act
18  CITY OF RANCHO PALOS VERDES,         33 U.S.C. § 1251 *et seq.*)

19              Defendant.
20  _____/

21

22        Plaintiff CALIFORNIA RIVER WATCH ("RIVER WATCH") hereby brings this

23  civil action pursuant to the Federal Water Pollution Control Act, also known as the Clean

24  Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.*

25  **I.    INTRODUCTION**

26  1.    This action is a citizens' suit for injunctive relief, civil penalties, and remediation

27  brought against Defendant CITY OF RANCHO PALOS VERDES ("the CITY") for

28

                                         1

routinely violating an "an effluent standard or limitation under this Act"[1] and an order issued by the State with respect to an effluent quality standard or limitation and by discharging a pollutant from a point source to a water of the United States without complying with any other sections of the Act including CWA § 402, 33 U.S.C. § 1342.[2]

2.     On or about October 7, 2016, RIVER WATCH provided notice of the CITY's violations of the CWA to the (1) Administrator of the United States Environmental Protection Agency ("EPA"), (2) EPA's Regional Administrator for Region Nine, (3) Executive Director of the State Water Resources Control Board ("State Board"), (4) Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), and (5) the CITY as required by the CWA 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of RIVER WATCH's 60-Day Notice of Violations ("Notice") is attached as **Exhibit A** and incorporated by reference.  The CITY, the Regional Board, the State Board, the Regional and National Administrators of EPA all received this Notice.

3.     More than sixty days have passed since RIVER WATCH's Notice was served on the CITY, the Regional Board, the State Board, and the Regional and National EPA Administrators. RIVER WATCH is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this Complaint. This action's claim for civil penalties is not barred by any prior administrative penalty under section 309(g) of the CWA, 33 U.S.C. § 1319(g).

---

[1] See CWA § 505(a)(1)(A), 33 U.S.C. 1365(a)(1)(A).  "[A]ny citizen may commence a civil action on his own behalf against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this Act

[2] See CWA § 301, (a) 33 U.S.C. § 1311(a).  "Except as in compliance with this section and sections 302, 306, 307, 318, 402, and 404 of this Act [33 U.S.C. §§ 1312, 1316, 1317, 1328, 1342, 1344], the discharge of any pollutant by any person shall be unlawful."

## II.   JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and 33 U.S.C. § 1365(a) (CWA citizen suit jurisdiction). The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-2202 (declaratory relief), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

5.     Venue is proper because the CITY and its discharging collection system are located,  and the events or omissions giving rise to RIVER WATCH's claims occurred, in this District. 28 U.S.C. § 1391(b)(1),(2). Venue is also proper because the CITY's CWA violations have occurred and are occurring within the District. 33 U.S.C. § 1365(c)(1).

## III.   PARTIES

6.     RIVER WATCH is, and at all times relevant to this Complaint was, an Internal Revenue Code § 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, with headquarters located in Sebastopol, California and mailing address of 290 S. Main Street, #817, Sebastopol, California 95472. The specific purpose of RIVER WATCH is to protect, enhance and help restore surface and ground waters of California including coastal waters, rivers, creeks, streams, wetlands, vernal pools, aquifers and associated environs, biota, flora and fauna, as well as to educate the public concerning environmental issues associated with these environs. Members of RIVER WATCH have interests in the waters and watersheds which are or may be adversely affected by the CITY's discharges and violations of the CWA as alleged herein. Said members may use the effected waters and watershed areas for recreation, sports, fishing, swimming, hiking, photography, nature walks and/or the like.  Furthermore, the relief sought will redress the injury in fact, likelihood of future injury, and interference with the interests of said members.  The CITY's ongoing violations of the CWA will cause irreparable harm to members of RIVER WATCH for which they have no plain, speedy,

1  or adequate remedy. The relief requested will redress the ongoing injury in fact to RIVER
2  WATCH's members.

3  7.      RIVER WATCH is informed and believes, and on such information and belief
4  alleges, that Defendant the CITY is now, and at all times relevant to this Complaint was,
5  a municipality formed under the laws of the State of California, with administrative
6  offices located at 30949 Hawthorne Boulevard, Rancho Palos Verdes, California.

7  **IV.    FACTUAL ALLEGATIONS WHICH GIVE RISE TO CLAIMS**

8  8.      RIVER WATCH incorporates by reference all the foregoing including **Exhibit A**
9  as though the same were separately set forth herein.  RIVER WATCH takes this action
10 to ensure compliance with the CWA, which regulates the discharge of pollutants into
11 navigable waters.  The statute is structured in such a way that all discharges of pollutants
12 are prohibited with the exception of enumerated statutory provisions. One such exception
13 authorizes a discharger, who has been issued a permit pursuant to CWA § 402, 33 U.S.C.
14 § 1342, to discharge designated pollutants at certain levels subject to certain conditions.
15 The effluent discharge standards or limitations specified in a National Pollutant Discharge
16 Elimination System ("NPDES") permit define the scope of the authorized exception to
17 the CWA § 301(a), 33 U.S.C. § 1311(a) prohibition, such that violation of a permit limit
18 places a discharger in violation of the CWA.

19 9.      The CWA provides that authority to administer the NPDES permitting system in
20 any given state or region can be delegated by the EPA to a state or to a regional regulatory
21 agency, provided that the applicable state or regional regulatory scheme under which the
22 local agency operates satisfies certain criteria (*see* CWA § 402(b), 33 U.S.C. § 1342(b)).
23 In California, the EPA has granted authorization to a state regulatory apparatus comprised
24 of the State Water Resources Control Board and several subsidiary regional water quality
25 control boards to issue NPDES permits.  The entity responsible for issuing NPDES
26 permits and otherwise regulating the CITY's operations in the region at issue in this
27 Complaint is the Regional Water Quality Control Board, Los Angeles Region
28

Complaint For Injunctive Relief, Civil Penalties, and Declaratory Relief

1  ("RWQCB").

2  10.    While delegating authority to administer the NPDES permitting system, the CWA

3  provides that enforcement of permitting requirements under the statute relating to effluent

4  standards or limitations imposed by the Regional Boards can be ensured by private parties

5  acting under the citizen suit provision of the statute (*see* CWA § 505, 33 U.S.C. § 1365).

6  RIVER WATCH is exercising such citizen enforcement to enforce compliance by the

7  CITY with the CWA.

8  11.    RIVER WATCH has identified discharges of sewage from the CITY's sewage

9  collection system to waters of the United States in violation of CWA § 301(a), 33 U.S.C.

10  1311(a), which states in relevant part, "Except as in compliance with this section and

11  sections 302, 306, 307, 318, 402, and 404 of this Act [33 U.S.C. §§ 1312, 1316, 1317,

12  1328, 1342, 1344], the discharge of any pollutant by any person shall be unlawful."

13  12.    RIVER WATCH has also identified numerous violations of orders issued by the

14  State with respect to a standard or limitation (*see* CWA § 505(a), 33 U.S.C. 1365(a),

15  specifically Order No. R2-2012-0175 NPDES. No. CAS005001, amended by Order No.

16  01-182,  NPDES. No. 004001, the *"California Regional Water Quality Control Board,*

17  *Los Angeles Region, Waste Discharge Requirements For Municipal Separate Storm*

18  *Sewer System (MS4) Discharges Within the Coastal Watersheds of Los Angeles County,*

19  *Except Those Discharges Originating from the City of Long Beach MS4,"* of which the

20  CITY is currently a co-permittee. ("MS4 WDR").  The MS4 WDR states, in relevant part,

21  that unless expressly authorized under the permit: "Each Permitee shall, for the portion

22  of the MS4 for which it is the owner or operator, prohibit non-storm water discharges

23  through the MS4 to receiving waters" (*see* Section 111.A. "Discharge Prohibitions").  In

24  practice, the discharge of any SSO to any storm drain system or watercourse under the

25  CITY's jurisdiction violates this subsection of the CITY's MS4 NPDES permit.

26  13.    RIVER WATCH contends that for the period October 6, 2011 to October 6, 2016,

27  the CITY has violated the Act as described herein.  Further that the CITY has violated the

28

Complaint For Injunctive Relief, Civil Penalties, and Declaratory Relief

following requirements of the MS4 WDR with respect to its sewage collection system and municipal storm sewer system.  RIVER WATCH contends these violations are continuing or have a likelihood of occurring in the future:

a.    <u>Collection System Discharges Caused by Underground Exfiltration</u>.  It is a well-established fact that exfiltration caused by pipeline cracks and other structural defects in a sewer collection system result in discharges to adjacent surface waters via underground hydrological connections. RIVER WATCH contends untreated sewage is discharged from cracks, displaced joints, eroded segments, etc., in the CITY's sewer collection system into groundwater hydrologically connected to surface waters including, but not limited to, tributaries of the Pacific Ocean such as Manhattan Beach, Santa Monica Bay, Long Beach Harbor, the Dominguez Channel, the Los Angeles Harbor Watershed and the Ballona Creek Watershed. Surface waters become contaminated with pollutants including human pathogens. Chronic failures in the collection system pose a substantial threat to public health.

Studies tracing human markers specific to the human digestive system in surface waters adjacent to defective sewer lines in other systems have verified the contamination of the adjacent waters with untreated sewage.[3] Evidence of exfiltration can also be supported by reviewing mass balance data, "inflow and infiltration" ("I/I") data, video inspection, as well as tests of waterways adjacent to sewer lines for nutrients, human pathogens and other human markers such as caffeine.  Any exfiltration found from the CITY is a violation of the NPDES permit and thus the CWA.  During the course of discovery RIVER WATCH will test surface waters adjacent to sections of the CITY's sewer collection system to determine the location and extent of exfiltration.

---

[3] *See* the Report of Human Marker Study issued in July of 2008 and conducted by Dr Michael L. Johnson, U.C. Davis water quality expert, performed for the City of Ukiah, finding the presence of human derived bacteria in two creeks adjacent to defective sewer lines.

Complaint For Injunctive Relief, Civil Penalties, and Declaratory Relief

b.      Collection System Surface Discharges Caused by Sanitary Sewer Overflows.
Sanitary sewer overflows ("SSOs"), in which untreated sewage is discharged above ground from the sewage collection system prior to reaching the Joint Water Pollution Control Plant, are alleged to have occurred both on the dates identified in the California Integrated Water Quality System ("CIWQS") Interactive Public SSO Reports and on dates when no reports were filed by the CITY, all in violation of the MS4 WDR and the CWA. The below listed violations are reported by the RWQCB, and evidenced by the CIWQS SSO Reporting Program Database Records:

33 SSOs were reported as reaching a water of the United States, as evidence in CIWQS and the records of the CITY. As listed in CIWQS, the event IDs of those violations are: 811194, 781750, 822839, 800447, 814474, 810070, 817282, 806132, 820096, 823549, 822514, 792151, 785983, 796124, 806821, 776087, 820624, 787480, 815919, 812581, 801344, 821174, 789154, 810420, 786360, 782266, 788976, 788778, 801768, 796618, 796797, 808715, 807585.

All identified discharges are violations of CWA § 301(a), 33 U.S.C. 1311(a) as they are discharges of a pollutant (sewage) from a point source (sewage collection system) to a water of the United States without complying with any other sections of the Act.

14.    The CITY's aging collection system has historically experienced high I/I during wet weather.  Structural defects which allow I/I into the sewer lines result in a buildup of pressure causing SSOs.  Overflows caused by blockages and I/I result in the discharge of raw sewage into gutters, canals, and storm drains connected to adjacent surface waters such as Manhattan Beach, Santa Monica Bay, Long Beach Harbor, the Dominguez Channel, the Los Angeles Harbor Watershed, the Ballona Creek Watershed and the Pacific Ocean – all waters of the United States.

15.    As recorded in CIWQS Public SSO Reports, the CITY's sewer collection system has experienced at least 35 SSOs between October 6, 2011 and October 6, 2016, with a combined volume of at least 95,419 gallons – 41,099 gallons of which were reported as

7

having reached surface waters.  A few examples are identified below:

•      May 26, 2012 (Event ID # 781750) – an overflow estimated at 6,700 gallons occurred between Eddinghill Drive and Rothrock Drive as a result of root intrusion.  According to the report, 6,400 gallons discharged into Ballona Creek and the Pacific Ocean via private drain #278.

•      November 29, 2014 (Event ID # 811194) – an overflow estimated at 7,500 gallons occurred at Manhole #572, draining into storm drain #PD 0243.  According to the report, all 7,500 gallons discharged into Manhattan Beach Frontal Santa Monica Bay.

•      August 6, 2015 (Event ID # 817282) – an overflow estimated at 18,000 occurred on a mainline between Manholes #583 and 584 as a result of root intrusion.  According to the report, 16,500 gallons discharged into the Pacific Ocean through storm drain #PD 0227.

Further, while some spills occurred in areas which were dry at the time of the spill, the discharged pollutants remain on the surface of the land and enter receiving waters following rainfall or flooding.

16.    RIVER WATCH is further informed and believes, and on such information and belief alleges, that the CITY's SSO Reports, which would reveal critical details about each of these SSOs, lack responses to specific questions that would identify the causes and the potential repairs ensuring these violations would not recur.  For example, the CITY's SSO Reports frequently state "null" in response to Question 12 ("Number of appearance points") and Question 44 ("Explanation of Volume estimation used").  Finally, RIVER WATCH contends the CITY is underestimating impacts to surface water.  Of the 35 reported violations identified on CIWQS, none were sampled for pollutants.

17.    RIVER WATCH contends that many of the SSOs reported by the CITY as having been contained without reaching a surface water did in fact discharge to surface waters; and those reported as partially reaching a surface water did so in greater volume than

stated.  A careful reading of the time the CITY receives notification of an SSO, the time of its response, and the time at which the SSO ended too often appear as unlikely estimations.  For instance:

- The SSO Report from a spill event on June 20, 2013 (Event ID # 796124) lists the estimated start time at 9:11 AM, agency notification time at 10:30 AM, operator arrival time as 10:40 AM, and spill end time as the exact same time of 10:40 AM. This spill occurred at the Laurel Drive Pump Station, but very little detail is given in the CITY's report. For example, for question number "44 – Explanation of volume estimation method used," the CITY reported "null." The total volume is estimated at 714 gallons, none of which was recovered, with 639 gallons reported as affecting Manhattan Beach and the Santa Monica Bay.

- The SSO Report from a spill event on March 8, 2016 (Event ID # 822839) lists the estimated start time as 07:59 AM, agency notification time only one minute later at 08:00 AM, operator arrival time as 08:37AM, and spill end time as 09:30 AM. The CITY estimated a total volume of 4,500 gallons, none of which was reported as recovered, the entire 4,500 gallons reported as reaching a surface water after spilling into a private drain through Manhole #790.  While the spill is reported to have discharged into an "unnamed terrain," the location of the spill destination is not identified.  RIVER WATCH contends the one minute difference between the time at which the spill is reported to have occurred and the time CITY was notified is suspect and suggests the CITY underestimates the actual volume of SSOs that reach surface waters.

18.    The CITY also fails to adequately mitigate the impacts of SSOs.  The CITY is a permittee under the Statewide General Requirements for Sanitary Sewer Systems, Waste Discharge Requirements Order No. 2006-003-DWQ ("Statewide WDR") governing the operation of sanitary sewer systems.  The Statewide WDR mandates that the permittee shall take all feasible steps to contain and mitigate the impacts of a SSO.  The EPA's

"*Report to Congress on the Impacts of SSOs*" identifies SSOs as a major source of microbial pathogens and oxygen depleting substances.  Numerous critical habitat areas exist within the areas of the CITY's SSOs.  There is no record of the CITY performing any analysis of the impact of SSOs on critical habitat of protected species under the federal Endangered Species Act ("ESA"), nor any evaluation of the measures needed to restore water bodies designated as critical habitat from the impacts of SSOs.

19.    The Statewide WDR requires the CITY to take all feasible steps and perform necessary remedial actions following the occurrence of a SSO, including limiting the volume of waste discharged, terminating the discharge, and recovering as much of the wastewater as possible.  Further remedial actions include intercepting and re-routing of wastewater flows, vacuum truck recovery of the SSO, cleanup of debris at the site, and modification of the collection system to prevent further SSOs at the site.  One of the most important remedial measures is the performance of adequate sampling to determine the nature and the impact of the release.  As the CITY is severely underestimating SSOs which reach surface waters, RIVER WATCH contends the CITY is also not conducting sampling on most SSOs.

20.    The Pacific Ocean has many beneficial uses as defined in the RWQCB's Basin Plan.  SSOs reaching the body of water cause prohibited pollution by unreasonably affecting its beneficial uses.

21.    The Palos Verdes Nature Preserve, consisting of 1,400 acres, is located on the southern side of the Palos Verdes Peninsula.  Owned by the CITY, the Preserve comprises 10 individual Reserves – Abalone Cove Ecological Reserve, Agua Amarga Reserve, Alta Vicente Reserve, Filiorum Reserve, Forrestral Reserve, Portuguese Bend Preserve, San Ramon Reserve, Three Sisters Reserve, Vicente Bluffs Reserve and Vista Del Norte Reserve.  Together they provide home to the Palos Verdes Blue butterfly (found nowhere else in the world), the El Segundo Blue butterfly, the brush rabbit (a rare species), the non-native eastern fox squirrel, the California ground squirrel, the western fence-lizard,

the side-blotched lizard, the southern Pacific rattlesnake, the striped racer, the Pacific gopher snake, Cooper's hawk and Southern California rufous-crowned sparrow (two bird species considered sensitive by the California Department of Fish and Game), the red-tailed hawk, mourning dove, common raven corvus corax, bushtit, bewick's wren, house wren, common yellowthroat, the California towhee, spotted towhee, song sparrow, indigo bunting, lesser goldfinch and the hooded oriole, the threatened California gnatcatcher and coastal cactus wren.

22.    Abalone Cove State Marine Conservation Area and Point Vicente State Marine Reserve are home to Brandt's cormorant, the brown pelican, common murre, double-crested cormorant, least tern, marbled murrelet, pelagic cormorant, pigeon guillemot, rhinoceros auklet, western clark's (pacific and red-necked), northern fulmar, red-necked phalarope, white-winged surf, black-vented sooty, aurora rockfish, bank rockfish, barred surfperch, bat ray, big skate, black rockfish, black surfperch, black and yellow rockfish, black gill rockfish, blue rockfish, blue rockfish, boccaccio, bronze spotted rockfish, brown rockfish, brown smooth-hound, cabezon, calico rockfish, California halibut, California skate, canary rockfish, chili pepper rockfish, China rockfish, copper rockfish, cowcod, dark blotched rockfish, Dover sole, English sole, flag rockfish, gopher rockfish, grass rockfish, green blotched rockfish, green spotted rockfish, green striped rockfish, kelp greenling, kelp rockfish, leopard shark, lingcod, longnose skate, and dozens more.

23.    RIVER WATCH is understandably concerned regarding the effects of both surface and underground SSOs on critical habitat in and around the diverse and sensitive ecosystem of the CITY.

24.    The location or locations of the various violations are identified in records created and/or maintained by or for the CITY which relate to its sewage collection system as further described in this Complaint.

25.    The CITY is located in the Palos Verdes Peninsula. The Palos Verdes Peninsula is situated in the southwestern portion of Los Angeles County atop the Palos Verdes Hills,

bounded to the north by Torrance, to the east by Los Angeles, and to the south and west by the Pacific Ocean. The CITY serves a population of approximately 39,000 residents in a area of approximately 13.7 miles.

26.   The CITY's sewage collection system consists of about 141 miles of gravity and low pressure sewer lines, and 7 pump stations. The existing sewer pipes, ranging from 8 to 12 inches in diameter, are predominantly vitrified clay pipe material.  Annually, the CITY spends approximately $234,000 for the maintenance of its system.  The CITY's local sewers discharge into Los Angeles County Sanitation District facilities for conveyance, treatment, and disposal. The County of Los Angeles Consolidated Sewer Maintenance District, in conjunction with the CITY's Public Works Department, are responsible for the operation and maintenance of the majority of the CITY's collection system in the CITY (with the exception of the area known as Abalone Cove, in which the CITY is solely responsible for the operation and maintenance of approximately 130 manholes, 1 diversion structure, and 19,615 linear feet of force main).

27.   The Los Angeles County Sanitation District operates 11 wastewater treatment plants treating a basin-wide flow of approximately 576 million gallons per day ("mgd") for roughly 5 million people located in the greater metropolitan Los Angeles County area. Six of the District's largest facilities are connected through a regional network of sewers and treatment facilities known as the Joint Outfall System ("JOS") servicing the wastewater treatment needs of roughly 4.6 million people. The public served by this system generates roughly 500 mgd of wastewater conveyed over 1,000 miles of main truck sewers to those 6 facilities.

28.   The Palos Verdes Peninsula area is divided into two Hydrologic Unit Code ("HUC-12") equivalent watersheds: 1) Santa Monica Bay Watershed and 2) the Greater Dominguez Channel Watershed Management Area, which is subdivided into two sub watersheds, the Los Angeles Harbor sub-watershed and the Machado Lake sub-watershed. A drainage divide dissects the Peninsula from the northeast to the southwest

with the westerly portion draining into Santa Monica Bay and the easterly portion draining to Machado Lake and the Los Angeles harbor sub-watersheds. The Santa Monica Bay watershed accounts for 63% (14.2 square miles) of the total Peninsula area, and includes portions of the cities of Palos Verdes Estates, Rancho Palos Verdes, and Rolling Hills Estates. The Los Angeles Harbor sub-watershed accounts for 15% (3.4 square miles) of the total Peninsula area, and includes portions of the cities of Rancho Palos Verdes and Rolling Hills Estates. The Machado Lake sub-watersheds accounts for 22% (4.9 square miles) of the total Peninsula area, and includes portions of the cities of Palos Verdes Estates, Rancho Palos Verdes, Rolling Hills Estates, and the County of Los Angeles. Drainage from the Peninsula's agencies is conveyed via natural, soft bottom canyons in conjunction with structured storm drain systems.

## V.    STATUTORY AND REGULATORY BACKGROUND

29.    CWA § 301(a), 33 U.S.C. § 1311(a) prohibits discharges of pollutants or activities not authorized by, or in violation of, an effluent standard or limitation or an order issued by the EPA or a State with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402, 33 U.S.C. § 1342. Additional sets of regulations are set forth in the Basin Plan, California Toxics Rule, the Code of Federal Regulations, and other regulations promulgated by the EPA and the State Water Resources Control Board.  Sewage is specifically identified in the CWA as a pollutant.  The sewer lines and storm water system owned by the CITY are point sources under the CWA.

30.    The affected waterways detailed in this Complaint and in the Notice are navigable waters of the United States within the meaning of CWA § 502(7), 33 U.S.C. § 1362(7).

31.    The Administrator of the EPA has authorized the Regional Water Quality Control Board to issue NPDES permits, subject to specified conditions and requirements, pursuant to CWA § 402, 33 U.S.C. § 1342.

32.    The CITY is in possession of no NPDES Permit authorizing it to discharge pollutants into navigable waters of the United States within the meaning of the CWA.

Complaint For Injunctive Relief, Civil Penalties, and Declaratory Relief

33.     The Code of Federal Regulations Title 40 Section 122.41 (40 CFR § 122.41) includes conditions or provisions that apply to all NPDES permits. Additional provisions applicable to NPDES permits are found in 40 CFR § 122.42. All applicable provisions in 40 CFR § 122.41 and 40 CFR § 122.42 are incorporated in the CITY's MS4 WDR. The CITY must comply with all of the provisions.  Pursuant to 40 CFR § 122.41 any permit non-compliance constitutes a violation of the CWA.

## VI.    VIOLATIONS

34.     The CITY's unpermitted discharges of untreated sewage from its sewage collection system, as detailed herein and in the Notice are violations of CWA § 301(a),  33 U.S.C. § 1311(a).   The violations are established in RWQCB files for the CITY's sewage collection system as well as in studies conducted by the CITY in compliance with orders from regulatory agencies.

35.     The enumerated violations are detailed in the Notice, incorporated herein by reference, and below, designating the section of the CWA violated by the described activity.

## VII.   FIRST CLAIM FOR RELIEF

**Pursuant to CWA § 505(a)(1)(A), 33 U.S.C. 1365(a)(1)(A) - Violation of an effluent standard or limitation under the Act - Discharges of a Pollutant From a Point Source to Navigable Waters of the United States not in Compliance with the Act**

36.     RIVER WATCH realleges and incorporates by reference the allegations of Paragraphs 1 through 35, including **Exhibit A**, as though fully set forth herein.

37.     The CITY has violated and continues to violate the CWA as evidenced by the discharges of pollutants (raw sewage) from a point source (the sewer lines and storm water sewage collection system) to waters of the United States in violation of CWA § 301(a), 33 U.S.C. § 1311(a).

38.     The CITY has self-reported and certified under oath as to SSOs reaching a water of the United States, as evidenced in CIWQS and its own records.  As listed in CIWQS,

Complaint For Injunctive Relief, Civil Penalties, and Declaratory Relief

the event ID number of those violations are identified herein and in the Notice.

39.     All discharges identified herein are violations of CWA § 301(a), 33 U.S.C. 1311(a) in that they are discharges of a pollutant (sewage) from a point source (sewage collection system) to a water of the United States without complying with any other sections of the Act.

**VIII.  SECOND CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B)  – Violation of Order No. R2-2012-0175, NPDES No. CAS004001  –  Failure to Prohibit Non-storm Water Discharges into the MS4 and Watercourses**

40.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 39, including **Exhibit A**, as though fully set forth herein.

41.     The CITY has self-reported and certified under oath as to its non-storm water discharges into the MS4 and waters of the United States, as evidenced in CIWQS and the records of the CITY.

42.     Sewage is a pollutant under the CWA.   In its report to Congress, the EPA determined that SSOs cause a condition of pollution, contamination, or nuisance in receiving waters.

**IX.     THIRD CLAIM FOR RELIEF**

**Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B)  – Violation of Order No. R2-2012-0175, NPDES. No. CAS004001 – Discharges from the MS4 That Cause or Contribute to the Violation of Receiving Water Limitations Are Prohibited**

43.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 42, including **Exhibit A**, as though fully set forth herein.

44.     The CITY has certified under oath as to SSOs that have violated Discharge Prohibitions identified herein and in the Notice by discharging from its MS4 in such a manner as to cause or contribute to a violation of receiving water limitations.

//

## X.     FOURTH CLAIM FOR RELIEF

Violation of CWA § 301(a), 33 U.S.C. § 1311(a) Pursuant to CWA § 505(a)(1)(B), 33 U.S.C. 1365(a)(1)(B) – Violation of Order No. R2-2012-0175, NPDES. No. CAS004001 – Discharges from the MS4 of Storm Water, or Non-Storm Water, for Which a Permittee is Responsible, Shall Not Cause or Contribute to a Condition of Nuisance

45.     RIVER WATCH re-alleges and incorporates by reference the allegations of Paragraphs 1 through 44, including **Exhibit A**, as though fully set forth herein.

46.     As described herein and in the Notice, the CITY is discharging from its MS4 stormwater and/or non-stormwater which is causing or contributing to a condition of nuisance.

47.     The violations of the CITY as set forth in all the above stated Claims For Relief are ongoing and will continue after the filing of this Complaint.  RIVER WATCH alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by the CITY to the RWQCB.  Each of the CITY's violations is a separate violation of the CWA.

48.     RIVER WATCH avers and believes and on such belief alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, the CITY will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases.  RIVER WATCH avers and believes and on such belief alleges that the relief requested in this Complaint will redress the injury to RIVER WATCH's members, prevent future injury, and protect the interests of RIVER WATCH's members which are or may be adversely affected by the CITY's violations of the CWA, as well as other State and Federal standards.

## XI.     RELIEF REQUESTED

WHEREFORE, RIVER WATCH prays that the Court grant the following relief:

49.     Declare the CITY to have violated and to be in violation of the CWA.

50.     Issue an injunction ordering the CITY to immediately operate its sewage collection system in compliance with the CWA.

51.     Order the CITY to perform the following remedial measures:

A.      Sewer Collection System Investigation and Repair

      1.      The repair or replacement, within two (2) years, of all sewer lines in the CITY's sewer collection system sufficiently proximate to a surface water and determined to pose a risk of exfiltrating to that surface water, which have been CCTV'd within the past ten (10) years and were rated as Significantly Defective (PACP 5 or 4) or given a comparable assessment.

      2.      Within two (2) years, the completion of a Surface Water Condition Assessment of sewer lines which have not been CCTV'd during the past ten (10) years.

      3.      Within two (2) years after completion of the Surface Water Condition Assessment above, the CITY will:

            i.      Repair or replace all sewer lines found to be Significantly Defective;

            ii.     Repair or replace sewer pipe segments containing defects with a rating of 3 based on the PACP rating system, if such defect resulted in a SSO, or, if in the CITY's discretion, such defects are in close proximity to Significantly Defective segments that are in the process of being repaired or replaced; sewer pipe segments which contain defects with a rating of 3 that are not repaired or replaced within five (5) years after completion of the Surface Water Condition Assessment are to be re-CCTV'd every five (5) years to ascertain the condition of the sewer line segment. If the CITY determines that the grade-3 sewer pipe segment has deteriorated and needs to be repaired or replaced, the CITY shall complete such repair or replacement within two (2) years after the last CCTV cycle.

4.     Beginning no more than one (1) year after completion of the Surface Water Condition Assessment, the CITY shall commence a Full Condition Assessment to be completed within seven (7) years. Any sewer pipe segment receiving a rating of 5 or 4 based on the PACP rating system shall be repaired or replaced within three (3) years after the rating determination.

5.     Provision in the CITY's Capital Improvements Plan to implement a program of Condition Assessment of all sewer lines at least every five (5) years. This program shall begin one (1) year following the Full Condition Assessment described above.

B.   <u>SSO Reporting and Response</u>

1.     Modification of the CITY's Backup and SSO Response Plan to include in its reports submitted to the CIWQS State Reporting System the following items:

    i.     The method or calculations used for estimating total spill volume, spill volume that reached surface waters, and spill volume recovered.

    ii.     For Category I and II Spills, a listing of nearby residences or business owners who have been contacted to attempt to establish the SSO start time, duration, and flow rate, if such start time, duration, and flow rate have not been otherwise reasonably ascertained, such as from a caller who provides information that brackets a given time that the SSO began.

    iii.     Taking of photographs of the manhole flow at the SSO site using the Los Angeles Method array, if applicable to the SSO, or other photographic evidence that may aid in establishing the spill volume.

2.     Pursuant to the CITY's legal obligation under the Statewide WDR, Section D.7.v., the CITY shall obtain a qualified biologist to develop and implement an adequate sampling program to determine the nature and impact of all

SSOs.

3.   Creation of website capacity to track information regarding SSOs or, in the alternative, the creation of a link from the CITY's website to the CIWQS SSO Public Reports. Notification shall be given by the CITY to all customers and other members of the public of the existence of the web-based program, including a commitment to respond to private parties submitting overflow reports.

4.   Performance of human marker sampling on surface waters adjacent to sufficiently proximate sewer lines to test for sewage contamination from exfiltration.

C.   Lateral Inspection/Repair Program

1.   Creation of a mandatory, private sewer lateral inspection and repair program triggered by any of the following events:

i.   Transfer of ownership of the property if no inspection/replacement of the sewer lateral occurred within ten (10) years prior to the transfer;

ii.   The occurrence of two (2) or more SSOs caused by the private sewer lateral within two (2) years;

iii.   A change of the use of the structure served (a) from residential to non-residential use, (b) to a non-residential use that will result in a higher flow than the current non-residential use, or (c) to non-residential uses where the structure served has been vacant or unoccupied for more than three (3)years;

iv.   Upon replacement or repair of any part of the sewer lateral;

v.   Upon issuance of a building permit with a valuation of $25,000.00 or more; or

vi.   Upon significant repair or replacement of the main sewer line to which the lateral is attached.

r

1  52.     Order the CITY to pay civil penalties of $37,500.00 per violation per day for its

2  violations of the CWA.

3  53.     Order The CITY to pay reasonable attorneys' fees and costs of RIVER WATCH

4  (including expert witness fees), as provided by CWA § 505(d), 33 U.S.C. § 1365(d).

5  54.     For such other and further relief as the court deems just and proper.

6

7  DATED: July 31, 2017                    LAW OFFICE OF JACK SILVER

8                                          By: _____
9                                               Jack Silver

10 DATED: July 31, 2017                    LAW OFFICE OF DAVID J. WEINSOFF
11
12                                         By: _____
13                                              David J. Weinsoff

14                                              Attorneys for Plaintiff
15                                              CALIFORNIA RIVER WATCH

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint For Injunctive Relief, Civil Penalties, and Declaratory Relief